**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| RYAN BRANDT, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>TOWNSHIP PROVISIONS, LLC d/b/a OVEN & TAP<br><br>Defendants. | Case No. 5:21-CV-05232-TLB |

**BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

COMES NOW Defendant Township Provisions, LLC d/b/a Oven & Tap, by and through its attorneys of record, and hereby moves this Honorable Court for dismissal of the claims brought against it by Plaintiff, Ryan Brandt, in her Amended Complaint.

## I.     FACTS AS ALLEGED IN PLAINTIFF'S AMENDED COMPLAINT

Plaintiff claims federal court jurisdiction based upon Fair Labor Standards Act ("FLSA") wage and hour claims against Defendant. (Dkt. 12, ¶ 4). Plaintiff also alleges various Arkansas state law contract and tort claims. The bulk of Plaintiff's allegations surrounds her work as a server at Defendant's Bentonville, Arkansas restaurant on or about December 2, 2021, and her subsequent termination. Plaintiff claims that on that night, she and another server waited on a table of approximately twenty-eight (28) members of the "$100 Dinner Club." (Dkt. 12, ¶¶ 14-16). Plaintiff alleges that after waiting on the large group, the Club generously tipped her and another server $4,200 in cash as well as an additional $200 in credit card tip. (Dkt. 12, ¶ 19).

1

Plaintiff alleges that her $2,100 cash portion of the tip resulted in a conversation with restaurant staff regarding whether she would be keeping the entire tip or whether the tip would be shared with other members of staff either pursuant to the restaurant's large-group service charge and/or tip out related policies. (Dkt. 12, ¶ 21-22). Plaintiff pleads that following this conversation, she messaged her customer contact with the Club, who had specifically requested Plaintiff and told them "what had happened," which at that point was only alleged to be a discussion. (Dkt. 12, ¶¶ 15, 24). Plaintiff alleges that the customers complained to the Defendant; the customers demanded the return of the cash from both the Plaintiff and the Defendant; and thereafter, the customers tipped the two servers with the cash portion. (Dkt. 12, ¶¶ 25-27). Importantly, Plaintiff alleges that she ultimately retained possession and control of her alleged $2,100 one-half share of the cash tip. (Dkt. 12, ¶¶ 26-27).

Plaintiff alleges that she was terminated on December 7, 2021, "for having discussed the occurrence with the customer" and that a social media firestorm ensued. (Dkt. 12, ¶¶ 29-30). Plaintiff alleges that "Defendant responded to the negative publicity by sending a "cease and desist" legal letter accusing Plaintiff of making false public statements and threatening her with legal action. (Dkt. 12, ¶ 33). Thereafter, Plaintiff filed her initial Complaint alleging claims specifically related to the above-described events as well as Defendant's general wage and hour practices. Defendant subsequently filed its Motion to Dismiss; and, Plaintiff responded in opposition and amended her Complaint. However, as outlined below, Plaintiff's Amended Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint is to be dismissed if it fails to state a claim upon which relief can be granted. In reviewing a motion to dismiss, the court is to view the complaint in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). However, only those allegations that are "well pleaded" need be taken as true by the Court in ruling on a motion to dismiss. *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999). The courts disregard conclusory allegations or legal conclusions masquerading as factual allegations. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Therefore, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007); *Springdale Educ. Ass'n v. Springdale School Dist*., 133 F.3d 649, 651 (8th Cir. 1998); *Morton v. Becker*, 793 F.2d 185, 188 n.2 (8th Cir. 1986) (affirming dismissal). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). Under *Iqbal*, the plausibility standard applies to pleading in all civil actions. *Id.*

## III.    ARGUMENT

Plaintiff's claims as amended fall primarily into three buckets: (1) FLSA and state law claims related to her termination; (2) FLSA and state law claims related specifically to the $2,100 cash tip and subsequent publicity; and (3) individual and collective FLSA claims related generally

to Defendant's utilization of a "tip credit" and its tip out practices. Respectfully, all three buckets are full of labels, conclusions, and formulaic allegations. However, and despite the filing of an Amended Complaint, the buckets remain devoid of the required factual allegations providing grounds for relief.

The FLSA is the only federal law invoked in Plaintiff's Amended Complaint and is the sole basis of Plaintiff's alleged federal court jurisdiction. As outlined herein, however, Plaintiff's FLSA claims fail as a matter of law. As such, the court should decline to exercise jurisdiction over Plaintiff's state law claims. The district court "may decline to exercise supplemental jurisdiction" if, among other things, it has already "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In the "usual case in which all federal-law claims are eliminated before trial," the relevant factors of "judicial economy, convenience, fairness, and comity," which the district court should consider before declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), will "point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988). In other words, if Plaintiff's FLSA claims are dismissed, the Court should not exercise supplemental jurisdiction over the remaining state law claims.

Alternatively, even if this Honorable Court declines to dismiss Plaintiff's FLSA claims, it should still decline to exercise supplemental jurisdiction over the remaining state law claims. Although Plaintiff's Amended Complaint attempts to relate her litany of state law claims to her FLSA wage and hour allegations, she has failed to do so. Further in the alternative, if this Honorable Court exercises supplemental jurisdiction over Plaintiff's remaining state law claims, Plaintiff's tort claims should still be dismissed for failure to state cognizable claims under Arkansas law.

A.  <u>MOTION TO DISMISS PLAINTIFF'S FEDERAL AND STATE CLAIMS RELATED TO HER TERMINATION.</u>

As a threshold matter, the cease and desist legal letter from defense counsel cannot serve as the legal or factual basis for any of Plaintiff's claims. Although notably absent from Plaintiff's Amended Complaint[1], the cease and desist sent by the undersigned law firm is attached to Defendant's Motion as Exh. A.[2]

The December 9, 2021, *Cease and Desist Social Media Defamation* letter that forms the basis of Plaintiff's federal Retaliatory Discharge and state law Outrage claims is, as a matter of law, a good faith legal opinion requesting that Plaintiff cease her defamatory social media attacks on Defendant's business operations. (Dkt. 12, ¶¶ 33, 58, 123, 128). Plaintiff's claims in her Amended Complaint that are specifically related to the cease and desist legal letter were improperly made to punish Defendant's hiring of defense counsel to challenge Plaintiff's malicious social media campaign against it.

However, Arkansas has enacted an anti-SLAPP ("strategic lawsuit against public participation") Act that is aimed at curbing claims, such as Plaintiff's, that seek to inhibit constitutionally protected speech related to government and judicial proceedings. Ark. Code Ann. §§ 16-63-501-508. Pursuant to the Act and the doctrine of qualified privilege, Defendant is immune from civil liability for making a "privileged communication" via counsel related to what

---

[1] Plaintiff's claims stemming directly from the cease and desist legal letter are also defective under Rule 10 of the Federal Rules of Civil Procedure because she failed to attach a copy as an exhibit to her Amended Complaint.

[2] Exh. A does not convert Defendant's Motion to Dismiss into a motion for summary judgment. See, 138 A.L.R. Fed 393 (stating: "[i]f a plaintiff fails to attach to the complaint a document which is integral to a claim or on which a claim is based, a number of courts have held that the document may be presented in support of the defendant's motion to dismiss under Rule 12(b)(6) or in support of or opposition to a motion for judgment on the pleadings and conversion to a motion for summary judgment is not required.").

would eventually become this legal proceeding. Ark. Code Ann. §§ 16-63-503; *see*, for example, *Front, Inc. v. Philip Khalil, et al.*, 28 N.E. 3d 15 (N.Y. 2015) (good-faith pre-litigation cease and desist letter was entitled to qualified privilege and could not be allowed to be a basis for defamation action because allowing a claim to proceed based on a legal cease and desist letter would be an impediment to justice); *Gateway, Inc. v. Companion Products*, 320 F.Supp.2d 912 (D.S.D. 2002) (litigation privilege applies to cease and desist). In addition, there is a verification requirement under the Act that applies to any complaint arising out of arguably privileged conduct. Ark. Code Ann. § 16-63-505.

Plaintiff should be precluded as a matter of law from asserting any claim whatsoever based upon the privileged legal statements contained in the cease and desist. Ark. Code Ann. § 16-63-506.[3] Alternatively, if Plaintiff's claims related to the cease and desist legal letter are not dismissed, the Court should strike as impertinent all allegations related to the alleged outrageousness or impropriety of the cease and desist legal letter pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. (Dkt. 12, ¶¶ 33, 58, 123, 128).

*(1) Plaintiff Fails to State a Prima Facie Case of Retaliation under the FLSA.*

As stated above, Plaintiff cannot rely upon the cease and desist to establish a claim for retaliatory discharge under the FLSA. However, even if this Court declines to dismiss or strike Plaintiff's claims related to the cease and desist, her Retaliatory Discharge claim under the FLSA remains fatally flawed because Plaintiff has not pled a *prima facie* case of retaliatory discharge

---

[3] In addition, Defendant is entitled to recover compensatory damages incurred in defending the claims related to the cease and desist, which were clearly brought to punish Defendant for retaining legal counsel to zealously protect its rights. Plaintiff's claims as a whole seem to ignore that Defendant has rights under the law as well, as a business and as an employer.

under the FLSA. 29 U.S.C. § 215(a)(3).[4] Plaintiff's alleged actions in "discussing the matters concerning the [$2,100] tip with a customer" are simply not "protected under the FLSA," where the customer discussion admittedly did not invoke any FLSA rights;[5] and the customer discussion was not part of a formal complaint or proceeding. (Dkt. 12, ¶¶ 122, 125, 126). In, *Bartis v. John Bommarito Oldsmobile- Cadillac, Inc.*, 626 F.Supp.2d 994, 997-98 (2009), the United States District Court for the Eastern District of Missouri has opined on the issue of termination following an employee's informal complaints and quoted both the federal statute, 29 U.S.C. § 215(a)(3), and the Eighth Circuit Court of Appeals:

> The [FLSA] makes it unlawful to discharge or to discriminate against an employee 'because such employee has **filed** any complaint or instituted or caused to be instituted any proceeding …, or has **testified** or is about to testify in any such proceeding, or has **served** or is about to serve on an industry committee.' 29 U.S.C. § 215(a)(3). To establish a prima facie case of retaliation, a plaintiff must show that [she] participated in statutorily protected activity, that the defendant took an adverse employment action against [her], and there was a causal connection between the two. *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034-35 (8th Cir. 2005).

*Id.* at 997-98 (emphases added) (summarizing the protected activities to include filing, testifying, and/or serving, *i.e.*, employee vindication of FLSA rights where a formal proceeding is initiated).

In *Bartis*, the plaintiff was an employee of a car dealership who complained to his supervisor about signing a weekly time sheet that disclaimed overtime pay and was terminated. *Id.* at 997. In dismissing plaintiff's FLSA retaliatory discharge claims, the *Bartis* court stated that

---

[4] According to Plaintiff's allegations, the alleged $2100 tip issue occurred on or about December 2, 2021, and she was terminated on December 7, 2021. (Dkt. 12, ¶¶ 14, 29, 122). The cease and desist did not follow until December 9, 2021, and therefore cannot retroactively serve as a basis of a retaliatory discharge claim under the FLSA. Exh. A.

[5] *See*, for example, *Karna v. BP Corp.*, 11 F.Supp.3d 809 (S.D. Tex. 2014) (no alleged discussion of minimum wage or overtime falling under the purview of the FLSA).

"'protected activities' are listed explicitly in the statute" and "[w]orkplace complaints are not included." *Id*. at 999 (declining to construe statute beyond its plain language and contrasting FLSA retaliatory discharge claims from the broader anti-retaliation provision of Title VII of the Civil Rights Act); *see also*, *Brown v. L & P Industries, Inc*., 2005 WL 3503637 (E.D. Ark. Dec. 21, 2005) (verbal, informal, unofficial complaints to an employer legally insufficient to invoke protection under 29 U.S.C. § 215(a)(3)); *Burns v. Blackhawk Management, Corp*., 494 F.Supp.2d 427 (S.D. Miss. 2007) (finding that under the FLSA's shifting burden test[6], employee's customer complaint is not the proper recourse for wage and hour complaints; and that complaining to employer's customer was a legitimate, nondiscriminatory reason for discharge). For these reasons, Plaintiff's retaliatory discharge claim must be dismissed for failure to state a claim under the FLSA.

### (2) Plaintiff Fails to Plead Facts That Would Trigger an Exception to Arkansas's General Rule of At-Will Employment.

Like her federal retaliatory discharge claim, Plaintiff cannot establish a claim for wrongful discharge under Arkansas law. Arkansas is an employment-at-will state, which generally means that either party may sever the employment relationship for any legal reason at any time. *Smith v. American Greetings Corp*., 304 Ark. 596 (1991). Arkansas recognizes a limited exception to the employment-at-will doctrine when "an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state." *Sterling Drug*, 294 Ark. 239, 249 (1988). The Arkansas Supreme Court explained in *Sterling Drug* that "a public policy discharge action is essentially predicated on the breach of an implied provision

---

[6] As stated in Defendant's Motion, it specifically preserves all available affirmative defenses, including, but not limited to, that all actions taken with respect to Plaintiff's employment were made in good faith and for non-retaliatory and non-pretextual reasons.

that an employer will not discharge an employee for an act done in the public interest." *Id*. In this instance, Plaintiff has not alleged facts that support her claim that she was terminated for pretextual or retaliatory reasons under the public policy exception to the employment-at-will-doctrine.

Here, Plaintiff alleges that she was wrongfully discharged "because she informed a customer that Defendant had taken the tip intended by customer for Plaintiff;" and that her termination "for speaking to a customer about the handling of the customer's tip is in violation of the public policy of Arkansas." (Dkt. 12, ¶ 37).[7] However, as a matter of law, "no public policy bars the dismissal of an at-will employee for disclosure of information to customers." 1 Arkansas Law Of Damages § 19:2 (citing *Koenighain v. Schilling Motors, Inc*., 35 Ark. App. 94 (1991)); *see supra*, *Bartis v. John Bommarito Oldsmobile- Cadillac, Inc*., 626 F.Supp.2d 994, 1000-1001 (2009) (dismissing plaintiff's wrongful discharge claims under Missouri's public policy exception to at-will employment; and, stating that "it is axiomatic that the at-will employee . . . 'blow the whistle' to the proper authorities"). Moreover, as Plaintiff has admitted in her Amended Complaint, Plaintiff has possession of the $2,100. As such, Plaintiff's wrongful discharge claim in her Amended Complaint cannot overcome her employment-at-will employment status and must be dismissed for failure to state a claim.

---

[7] In Plaintiff's Response to Plaintiff's Motion to Dismiss this discussion has morphed from a generic "handling of a customer's tip" to the hyperbolic "having the audacity to complain about having a tip stolen." (Dkt. 14, P. 9). Although the filing of the Amended Complaint mooted the papers regarding Defendant's original Motion to Dismiss, any reference to Plaintiff's $2,100 portion of the tip being "stolen" should be stricken from the record in this matter as inflammatory. This is not a criminal case and Plaintiff has admitted that Defendant never actually had physical possession of the $2,100.

*(3) Plaintiff's State Law Outrage Claim Must be Dismissed.*

As stated above, Plaintiff cannot rely upon the cease and desist letter to establish a claim of outrage under Arkansas law. However, even if this Court declines to dismiss or strike Plaintiff's claims related to the cease and desist, her claim of outrage remains fatally flawed. Discharged employees have frequently asserted claims of outrage in connection with wrongful termination claims against employers. Because employers have considerable latitude in dealing with [at-will] employees, such as Plaintiff, the courts have taken a strict view of outrage claims arising out of the discharge of an employee." 1 Arkansas Law Of Damages § 33:13; *see also*, *Kelley v. Ga.–Pac. Corp.*, 300 F.3d 910 (8th Cir. 2002) (a supervisor providing an employee's 19-year-old daughter with narcotics and taking her to a strip club); *Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991) (an employer threatening his employee, hitting the employee, and then firing the employee for "provoking a fight"). Here, Plaintiff alleges that loss of joy (unfortunate, but not outrageous); the termination from her at-will employment (not outrageous and admittedly insufficient to support a claim of outrage (Dkt. 14, P. 8)); the cease and desist legal letter that she received from the undersigned counsel (as outlined above, privileged pre-litigation legal correspondence that cannot support Plaintiff's claims); and, the media statements that the Defendant's owners made (that were not alleged to be untrue) were "extreme and outrageous." (Dkt. 12, ¶¶ 51-66). Therefore, even assuming the truth of the allegations of the Plaintiff's Amended Complaint, the facts alleged fall far short of conduct that was extreme and outrageous, beyond all possible bounds of decency; and, the Plaintiff's claim for outrage should be dismissed as a matter of law.

To establish a claim of outrage, a plaintiff must demonstrate four elements: (1) the defendant intended to inflict emotional distress or should have recognized emotional distress as a

likely result of his conduct; (2) the defendant's conduct was extreme, outrageous, and utterly intolerable in a civilized community; (3) the defendant's actions caused anguish or distress to the plaintiff; and (4) the emotional distress suffered was severe and of a type that no reasonable person should be expected to endure. *Duggar v. City of Springdale*, 2020 Ark. App. 220 (2020). While Plaintiff is correct when she points out in her Response to Defendant's Motion to Dismiss that the type of conduct that meets the standard for outrage must be determined on a case-by-case basis. (Dkt. 14, P. 8); *Addington v. Wal-Mart Stores, Inc*., 81 Ark. App. 441, 105 S.W.3d 369 (2003). That statement alone does nothing to change the fact that in Arkansas, "the elements of the tort of outrage are difficult to satisfy." 1 Arkansas Law Of Damages § 19:2 (citing *Mertyris v. P.A.M. Transport, Inc.,* 310 Ark. 132, 832 S.W.2d 823 (1992)).[8] The Arkansas courts have taken a particularly cautious approach to the tort of outrage, describing it as a "disfavored claim" and "an extremely narrow tort." *Sawada v. Walmart Stores, Inc.*, 473 S.W.3d 60, 69 (Ark. App. 2015); *Silverman v. Village*, 2019 WL 2881586, at *8 (E.D. Ark. July 3, 2019) (quoting *McAdams v. Curnayn*, 239 S.W.3d 17, 22 (Ark. App. 2006)).

Plaintiff's case-by-case statement also does not change the fact that "merely describing conduct as outrageous does not make it so." *Addington v. Wal-Mart Stores, Inc*., 81 Ark. App. 441, 450, 105 S.W.3d 369, 375 (2003); *Givens v. Hixson*, 275 Ark. 370 (1982). Likewise, "[m]erely reciting in a complaint a "bare legal conclusion" that a party's actions resulted in the tort of outrage does not permit the claim to proceed. The conduct must be "so outrageous in character, and so

---

[8] Not only are "the elements of the tort of outrage difficult to satisfy", but "any double recovery would be prohibited" should Plaintiffs' wrongful termination and outrage claims both survive dismissal, which they should not. 1 Arkansas Law Of Damages § 19:2.

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *M. B. M. Co., Inc. v. Counce*, 268 Ark. 269 (1980).

B. MOTION TO DISMISS PLAINTIFF'S FEDERAL AND STATE CLAIMS RELATED TO PLAINTIFF'S TIP RELATED CLAIMS

The FLSA requires employers to pay a minimum hourly wage. 29 U.S.C. § 206(a). However, the FLSA allows employers to apply a "tip credit" to satisfy the minimum wage requirement for tipped employees. Pursuant to the FLSA's "tip credit" provision, an employer may pay a tipped employee, such as Plaintiff, a lower cash wage so long as tips received by the employee make up the difference between the cash wage and the full minimum wage. 29 U.S.C. § 203(m). Where tips do not make up the difference, the employer must supplement wages so that the employee receives no less than the full minimum wage for all hours worked. 29 U.S.C. § 203(m). An employer who wishes to use a tip credit toward an employee's minimum wage must do two things: (1) inform the employee of section 203(m) of the FLSA, and (2) allow the employee to keep all tips they receive, except when tips are pooled "among employees who customarily and regularly receive tips." 29 U.S.C. § 203 (m).

*(1) Motion To Dismiss Plaintiff's Federal And State Law Claims Tip Related Claims Specific To The $2,100 Cash Tip.*

(a) Plaintiff has not pled that the $2,100 was confiscated under the FLSA.

Plaintiff takes issue with an alleged discussion regarding the handling of one-half of the $4,200 cash tip ($2,100) that she alleges was a charitable gift to her. (Dkt. 12, ¶ 17). However, there is no free-standing private cause of action under FLSA related solely to the $2,100, of which Plaintiff indisputably maintained ownership. *Trejo v. Ryman Hosp. Properties, Inc*., 795 F.3d 442 (4th Cir. 2015) (FLSA only applies to wage and hour claims, *i.e.* damages for unpaid wages or overtime).

Plaintiff's citation to 29 U.S.C. § 203(m)(2)(B) is correct in that it states:

[a]n **employer** may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

(emphasis added).

In other words, this section of the FLSA prohibits arrangements where the tip becomes property of the employer. *See*, DOL Fact Sheet #15: *Tipped Employees Under the FLSA,* Retention of Tips. However, there is no retention dispute to be discerned under 29 U.S.C. § 203(m)(2)(B) from the allegations in Plaintiff's Amended Complaint.

Plaintiff has not alleged that Defendant received any portion of the $2,100 as is prohibited under 29 U.S.C. § 203(m)(2)(B). Although the term "confiscated" is in the title of the claim and Plaintiff's claims are somewhat internally inconsistent, Defendant, as an employer, is not alleged to have confiscated, physically possessed, taken, kept, or distributed to managers or supervisors (or any other staff member) any portion of the $2,100 of the tip that Plaintiff claims as her own. (Dkt. 12, ¶¶ 102-105). Defendant is not alleged to have ever exercised actual control over the $2,100. Rather, Plaintiff alleges that there was a nebulous discussion about whether the $2,100 should be shared with her co-workers; and that Plaintiff and the customer determined that Plaintiff should retain ultimate physical possession and control over the $2,100 as her property.[9] 29 C.F.R. § 531.52 (matters determined by the customer include whether a tip is given, how much, and who shall be the recipient).

---

[9] It should also be noted that compulsory large group charges for service, such as adding 20% of the amount of the bill, is not a tip, but instead is part of the employer's gross receipts. However, this large group service charge may be distributed to the employees to satisfy the monetary requirements of the FLSA. 29 C.F.R. § 531.55.

(b)  <u>Plaintiff has not pled that the $2,100 was converted under Arkansas law</u>.

A plaintiff alleging conversion of personal property must prove that 1) the plaintiff owned or was entitled to possess the personal property, and 2) the defendant intentionally took or exercised dominion or control over the personal property in violation of the plaintiff's rights. Arkansas Model Jury Instructions–Civil, AMI 425 (2014 ed.). The Arkansas Supreme Court has defined the exercise of control as the possession or control of the property. *Patton v. Alexander,* 202 Ark. 883, 154 S.W.2d 1 (1941); *Reed v. Hamilton*, 315 Ark. 56, 864 S.W.2d 845 (1993), *McQuillan v. Mercedes-Benz Credit Corp.,* 331 Ark. 242, 961 S.W.2d 729 (1998) (trucking company found to have wrongfully refused to surrender two trucks back to true owner); *Bronakowski v. Lindhurst*, 2009 Ark. App. 513, 324 S.W.3d 719 (2009) (defendant cut down plaintiff's trees in order to effectuate a better lake view).

Plaintiff's original conversion claim stated two things (1) that Plaintiff received a $2,100 cash tip directly from customers, and (2) Defendant demanded that Plaintiff turn over this tip. (Dkt. 12, ¶¶ 23, 79, 81). Although, Plaintiff now alleges in Paragraphs 80-81 of her Amended Complaint that "Defendant took physical possession of the $2,100 at issue," Plaintiff has not alleged facts that support that Defendant exercised physical control over or was ever in physical possession of her alleged $2,100 portion of the cash tip. This new allegation of constructive possession and/or physical possession cannot be squared with the fact that Plaintiff alleges exactly otherwise in her Amended Complaint. See, (Dkt. 12, ¶¶ 23-27, 102, 104, 109). Plaintiff alleges that she had a discussion regarding whether she would be keeping the entire $2100 (alleged "constructive possession") and that she, herself, gave the tip back to the customer at customer's demand. The

customer, allegedly, in turn, proportionally returned the tip to her and another server. (Dkt. 12, ¶¶ 23-27, 103, 105). Although "constructive possession" is a legal term of art, it is inapplicable here where the $2,100 was admittedly never accessible to the Defendant or subject to its control. 3 Trial Handbook for Arkansas Lawyers § 57:1 (discussing constructive possession in the criminal and property contexts).

Like the original Complaint, the Amended Complaint does not allege that Plaintiff ultimately lost possession, use, or control over the $2,100. She merely alleges that there were several conversations that evening regarding the disposition of the cash between herself, the Defendant, and the customers that ultimately resulted in her retaining possession of her alleged portion of the cash tip. As such, Plaintiff's allegations fail to plead facts to support a claim of conversion as a matter of law. Arkansas Model Jury Instructions–Civil, AMI 425 (2014 ed.).

(3) Plaintiff has failed to adequately plead a False Light Invasion of Privacy claim under Arkansas law.

Even assuming the allegations in her Amended Complaint to be true, Plaintiff has failed to adequately plead a false light claim against Defendant related to her retention of the $2,100. The claim of false light "has two essential elements: the complaining party must show (1) that the false light in which he was placed by the publicity[10] would be highly offensive to a reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as to the **falsity** of the publicized matter and the false light in which the plaintiff would be placed." *Sawada v. Walmart Stores, Inc.*, 473 S.W.3d 60, 68–69 (Ark. App. 2015) (citing *Dodrill v. Ark. Dem. Co.*, 590 S.W.2d

---

[10] Defendant specifically reserves the right to plead the affirmative defense of no reasonable expectation of privacy where Plaintiff and her counsel placed the issue in the public view, including the cease and desist, via social media, etc.

840, 845 (Ark. 1979)) (emphasis added); *Duggar v. City of Springdale*, 2020 Ark. App. 220 (2020).

To succeed on a false light invasion of privacy claim, negligence is not enough; the evidence must support the conclusion that the publisher had serious doubts as to the truth of his publication. Brill, 1 *Ark. Law of Damages* § 33:11. Thus, the second element of a false light requires not only intent, but proof of actual malice. *Dodrill* at 845; *Dodson v. Dicker*, 812 S.W.2d 97, 99 (Ark. 1991). In other words, false light claims necessarily include the element of falsity. However, Plaintiff's Amended Complaint simply does not allege that she was placed in a false light where there is no indication that Defendant's alleged media statements were actually false. *Duggar v. City of Springdale*, 2020 Ark. App. 220, *16-17, 599 S.W.3d 672, 685 (2020). Rather, Plaintiff's allegations merely allude to a dispute regarding how the $2,100 was to be handled. (Dkt. 12, ¶¶ 70). Further, Plaintiff's own allegations also undermine her allegations of false light where she alleges that Defendant's owner made a media statement that Plaintiff "was not terminated for retaining the tip," but that due "to privacy and respect of our employees, we do not discuss employee affairs." (Dkt. 12, ¶ 38).

In addition to these two elements, Plaintiff must prove that she suffered damages that were proximately caused by Defendant's actions. Plaintiff must also plead a factual basis underlying her damages claim. *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 955-56, 69 S.W.3d 393, 402 (2002). Plaintiff has failed to do so. Because Plaintiff has failed to plead facts sufficient to support her false light claim and/or damages flowing therefrom, it should be dismissed.

C. <u>MOTION TO DISMISS PLAINTIFF'S FLSA INDIVIDUAL AND COLLECTIVE GENERAL TIP RELATED CLAIMS</u>

*(1) Plaintiff Has Not Adequately Pled Entitlement to Unpaid Minimum Wages, Without a Tip Credit Allowance, Under The FLSA.*

The Plaintiff's Amended Complaint alleges that she was employed as a server at Defendant's restaurant. (Dkt. 12, ¶ 6). Plaintiff alleges that Defendant claimed a tip credit for Plaintiff's wages pursuant to 29 U.S.C. § 203(m)(2); and that some nights she worked after the close of business. (Dkt. 2, ¶¶ 8, 9, 11). Plaintiff does not allege that as a server, she was not engaged in an occupation that did not allow Defendant to take shelter under the tip credit provision of the FLSA. Plaintiff does not allege that her cash wage, when combined with her tips as a server at Defendant's restaurant, ever fell short of the required minimum wage. Plaintiff does not allege that she was not informed of Defendant's intention to take shelter under the tip credit provisions of the FLSA, 29 U.S.C. § 203(m), regarding her wages. Rather, the Plaintiff has attempted to plead a factual basis for an individual FLSA claim against Defendant, on the grounds that Defendant utilized the FLSA tip credit to include her end of shift closing duties ("hours that she was not working as a server"). 29 U.S.C. § 203(m)(2). (Dkt. 12, ¶¶ 83-98). However, Plaintiff's factual allegations fail to state an FLSA claim against the Defendant regarding her end of shift duties and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff alleges that Defendant was not allowed to take a tip credit for the time spent performing her cleaning and closing duties because she spent a "substantial amount of time engaged in non-tipped labor that did not directly support her tipped labor." (Dkt. 12, ¶¶85, 87). The FLSA permits the tip credit provision to apply based upon her *occupation* as a server. 29 U.S.C. § 203(t) (emphasis added); 29 C.F.R. § 531.57. Respectfully, the closing and cleaning duties that Plaintiff describes in her Amended Complaint are part of, or at the very least incidental

to, her core duties as a server. 29 C.F.R. § 531.56(e) *See*, DOL Fact Sheet #15: *Tipped Employees*

*Under the FLSA,* <u>Dual Jobs</u> (describing a server's "related duties" and stating "a waitperson who

spends part of her time cleaning and setting tables, making coffee and occasionally washing dishes

or glasses" is engaged in duties related to her occupation as a server); Occupational Information

Network, http://www.onetonline.org (defining the core duties of a server to include cleaning

duties); WHD Opinion Letter WH-502 (server's time spent performing related duties such as

vacuuming after a shift are subject to tip credit); WHD Opinion Letter FLSA2018-27 ("related

duties in an occupation that is a tipped occupation need not by themselves be directed toward

producing tips). The Department of Labor ("DOL") regulations promulgated in the applicable

CFRs simply do not divide the duties of a tipped employee in a single occupation as tipped or non-

tipped, the tip credit cannot vacillate minute to minute based on the tasks that Plaintiff performs

as a server.

   Although Plaintiff uses the magic modifier "substantial" regarding the amount of time

allegedly spent on closing duties, she does not allege on average how many hours that she worked

per week and only alleges that she performed these closing duties "several hours per week." (Dkt.

12, ¶ 93); *Fast v. Applebee's Intern., Inc*., 638 F.3d 872 (8th Cir. 2011), cert. denied, 132 S.Ct.

1094 (2012) (affording deference to the DOL's Field Operations Handbook ("FOH") guidance for

dual occupation regulation analysis under an 80/20 rule, but declining to identify the tip producing

and non-tip producing duties as beyond the scope of the interlocutory appeal); *but see*, *Pellon v.*

*Business Representation Inter., Inc*., 528 F.Supp. 2d 1306 (S.D. Fla. 2007), aff'd 291 Fed. Appx.

310 (11th Cir. 2008) (20% limitation is unworkable and inappropriate where determination of

amount of time an employee engaged in a singular occupation, airport skycap, spent on non-tipped

duties is unfeasible). Regardless of whether the 80/20 or later guidance[11] applies to the Plaintiff's alleged cleaning and closing duties, she has failed to allege how that time related to the length of a typical shift. *Roberts v. Apple Sauce, Inc.*, 945 F.Supp.2d 995 (N.D. Ind. 2013).

Further, Plaintiff does not identify a specific policy of the Defendant regarding the requirement to perform closing duties. Plaintiff does not allege that she ever complained of this alleged policy to Defendant, its management, or ownership. Plaintiff does not allege that Defendant was on notice of the alleged FLSA violations related to Plaintiff's closing duties whatsoever. Plaintiff does not allege that any specific action or inaction by Defendant was willful, intentional, unreasonable, arbitrary, or in bad faith. Instead, Plaintiff only asserts bare legal conclusions such as "directly support," "substantial," and "willful." And that Defendant should have been aware of the statutory requirements of FLSA.[12]

Under the *Twombly* standards, when, as here, a plaintiff has failed to allege facts, which when taken as true raise more than a speculative right to relief, dismissal is warranted. *See Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). The Eighth Circuit has said after *Twombly*, "that a plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right [she] claims ..., rather than facts that are merely consistent with such a right.'" *Gregory v. Dillards*, 565 F.3d 464, 473 (8th Cir. 2009) (citing *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)). In other words, Plaintiff must do more than vaguely assert that Defendant, as an employer, had a policy and practice of working her past close and continuing to take shelter under the tip credit. In *Mell*, a case involving allegedly unreported overtime, the court

---

[11] The federal guidance has evolved several times since the Eighth Circuit's issued its opinion in *Fast*.

[12] As stated in Defendant's Motion, and above in n.4, it specifically preserves all available affirmative defenses, including, but not limited to, a showing of good faith and reasonable belief that it was in compliance with the FLSA.

stated that even if the court were to accept the plaintiffs' assertion as true that the defendant had a policy of unreported overtime, the plaintiffs must still assert factual allegations in support of their claims. *Mell v. GNC Corp.*, No. 10-945, 2010 WL 4668966, at *8 (W.D. PA Nov. 9, 2010).

The court in *Mell* also noted that the plaintiffs' allegations of a willful violation by the employer were inadequately pled, stating that "it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation." *Id.; McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988) (mere negligence on the part of an employer with regard to compliance with the FLSA is not sufficient to prove willfulness); *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713 (8th Cir. 2011) (no allegation of complaint to employer).

The general statute of limitations under the FLSA is two years. 29 U.S.C. § 255(a). However, a willful violation can increase the limitations period to three years. *Id*. Therefore, in her Amended Complaint, Plaintiff has added an allegation that "Defendant was aware of all laws and regulations governing its business." However, the U.S. Supreme Court and subsequently, the Eighth Circuit have rejected this "less stringent standard [and] made clear that an employer's general knowledge regarding a statute's potential applicability does not prove willfulness." *Hanger v. Lake County*, 390 F.3d 579, 584 (8th Cir. 2004) (citing *McLaughlin v. Richland Shoe Co*., 486 U.S. 128 (1988)). A jury could not permissibly find that the Defendant's alleged violations were willful based on the allegation of Defendant's knowledge of the existence of the FLSA alone, thus Plaintiff's allegations of willfulness must be dismissed.

Plaintiff fails to state a claim under her theory that the FLSA's tip credit should not apply to her closing duties in her occupation as a server; and, her individual FLSA claim should be dismissed.

20

(2) *Plaintiff Has Not Adequately Pled a Collective Action Related to Defendant's Alleged Tip Out Practices.*

In her Amended Complaint, Plaintiff attempts to assert a cause of action that arises from her claim that Defendant maintained an invalid tip out under the FLSA and thus, wrongfully withheld small portions of her tips as a server and redistributed them to certain co-workers. Certainly, all restaurant personnel play an integral role in the customer's service and overall dining experience. Further, the FLSA indisputably authorizes tip-sharing or pooling under certain circumstances.

As stated above, an employer who wishes to use a tip credit toward an employee's minimum wage must do two things: (1) inform the employee of section 203(m) of the FLSA; and (2) allow the employee to keep all tips they receive, except when tips are pooled among tipped employees. 29 U.S.C. § 203 (m). Under the FLSA, a tipped employee is defined as any employee engaged in an occupation in which he or she customarily and regularly receives more than $30 a month in tips. 29 U.S.C. § 203(t). However, the FLSA does not require that an employee directly receive the $30 monthly minimum directly from customers. 29 C.F.R. § 531.54 (where employees practice tip splitting, as where waiters give a portion of their tips to busboys, both the amounts retained by the waiters and those given the busboys are considered tips of the individuals who retain them, in applying the sections of [29 U.S.C. § 203(m) and 29 U.S.C. § 203(t)]); WHD Opinion Letter WH-380, 1976 WL 41732; *Kilgore v. Outback Steakhouse of Fla., Inc*., 160 F.3d 294, 301 (6th Cir. 1998) (host can be classified as tipped employee if he or she receives tips from apportionment from a tip pool; and, citing to *Marshall v. Krystal Co*., 467 F.Supp. 9, 13 (E.D. Tenn. 1978)).

Plaintiff alleges that Defendant uses "a tip-pooling arrangement whereby servers' tips are distributed to other members of restaurant staff." (Dkt. 12, ¶ 132). Plaintiff further alleges that

these members of restaurant staff were paid at least minimum wage and that some of them were not traditionally tipped employees under 29 U.S.C. § 203(m)(2) and its supporting Code of Federal Regulations rules. (Dkt. 12, ¶ 135). Yet, the Plaintiff has not alleged specific facts regarding why these categories of restaurant employees should not be included in any tip out mechanism under the FLSA.

Plaintiff has admitted that some of her co-workers, specifically bartenders, do receive tips. (Dkt. 12, ¶ 138). Taking admittedly tipped bartenders out of the equation, as eligible as a matter of law to participate in the tip out, Plaintiff has only nakedly alleged that some of the other restaurant staff in question, kitchen staff and server assistants, do not regularly and customarily receive more than $30 a month in tips as required under 29 U.S.C. § 203(t). (Dkt. 12, ¶ 136). However, server assistants in the form of bus persons are indisputably eligible to participate in tip-pooling, although they may have minimal customer interaction and do not normally receive tips directly from customers. See, Legislative History to 29 U.S.C. § 203(m); 29 C.F.R. § 531.54. Further, as indicated in *Kilgore*, server assistants such as hosts are eligible to participate in tip-pooling. *Kilgore v. Outback Steakhouse of Fla., Inc*., 160 F.3d 294, 301 (6th Cir. 1998).

As a matter of law, this leaves the undefined "kitchen staff" as the only potentially objectionable members of the alleged tip out arrangement. However, Plaintiff has not alleged the specific titles of the kitchen staff that she finds objectionable. Plaintiff has not alleged the extent of these employees' customer interaction, but only summarily stated "not regularly." (Dkt. 12, ¶ 136). Although the Sixth Circuit in *Kilgore* discussed a "*de minimis*" customer interaction requirement regarding the hosts, the statute does not specifically require regular customer interaction in order to share in a tip out arrangement. *Lentz v. Spanky's Restaurant II, Inc*., 491 F.Supp.2d 663, 670-71 (N.D. Tex. 2007). Plaintiff has not alleged that these untitled employees

22

do not provide any service whatsoever to restaurant customers or did not normally anticipate sharing in gratuity. *Alonso v. Ocean CC, LLC*, Not Reported in F.Supp.3d (2015), 2015 WL 1549009 (complaint lacked facts that certain categories of restaurant employees should not be included in tip pooling structure).

Plaintiff does not allege that she was not informed of the Defendant's intent to use a tip out mechanism. Like her individual claims, Plaintiff does not allege that she ever complained to Defendant, its management, or ownership regarding its tip out policies. Plaintiff does not allege that Defendant was on notice of Plaintiff's alleged collective FLSA violations related to tip sharing whatsoever. Plaintiff does not allege that she was not paid at least minimum wage (after combining the tip credit and employer's payments) for this time or any regular or overtime hours worked at the restaurant. Plaintiff does not allege that any specific action or inaction by Defendant was willful, intentional, unreasonable, arbitrary, or in bad faith. Instead, and like her previous claims, Plaintiff only asserts bare legal and factual conclusions.

Plaintiff's factual allegations fail to state a collective FLSA claim against the Defendant related to its tip sharing practices and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV.   CONCLUSION

For all of the reasons set forth above, Plaintiff's federal and state claims fail to provide a vehicle for the relief sought. Plaintiff's Amended Complaint should be dismissed in its entirety. Defendant should be awarded its costs and attorneys' fees in bringing this Motion to Dismiss and all other relief to which it may be entitled.

Dated February 15, 2022

Respectfully submitted,

Conner Eldridge, Ark. Bar No. 2003155
Emily A. Neal, Ark. Bar No. 2003087
Eldridge Brooks Partners
5100 West JB Hunt Dr., Ste. 840
Rogers, Arkansas 72758
Telephone: (479) 553-7678
Facsimile: (479) 553-7553
conner@eldridgebrooks.com
emily@eldridgebrooks.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2022, the foregoing Brief in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) was filed through the Court's electronic filing system, which serves counsel for all parties who are registered to participate as identified on the Notice of Electronic Filing (NEF).