UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RYAN BRANDT
and all others similarly situated                                                                                    PLAINTIFF

v.                                                   No. 5:21-CV-05232

TOWNSHIP PROVISIONS, LLC
*doing business as* Oven & Tap                                                                                       DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant Township Provisions, LLC's motion (Doc. 16) to dismiss and brief in support (Doc. 17). Plaintiff Ryan Brandt filed a response (Doc. 21) and brief (Doc. 22) in opposition. Defendant filed a reply (Doc. 27) with leave of Court. For the reasons stated below, Defendant's motion (Doc. 16) will be GRANTED IN PART and DENIED IN PART.

**I.     Background[1]**

Defendant owns and operates Oven & Tap, a restaurant where Plaintiff was previously employed as a server. On December 2, 2021, Plaintiff and another Oven & Tap server waited on a table of approximately 28 members of the "$100 Dinner Club" (the "Customers"). The Customers, as members of the $100 Dinner Club, each contributed $100 and received additional donations to tip servers when the Customers dined at restaurants as an act of private charity and goodwill. The Customers specifically requested Plaintiff to be their server and confirmed with a manager of Defendant that Oven & Tap did not engage in tip-pooling practices. At the end of their meal, the Customers tipped Plaintiff and her co-server $4,200 in cash and an additional $200 charged to a credit card, to be split between Plaintiff and her co-server. The Customers posted

---

[1] The background facts are based on Plaintiff's allegations which are accepted as true simply for purposes of this motion and do not constitute findings of the Court.

videos of the donation of the tip to various social medial websites.

Plaintiff alleges an Oven & Tap manager informed her she could not keep any portion of a tip that was over 20% and that she was required to turn over the $2,100 cash tip she received. Plaintiff then contacted the Customers and informed them that she was not being permitted to keep all of the tip, prompting the Customers to complain to the restaurant and demand return of the cash portion of the tip. Defendant returned the tip to the Customers, who in turn provided Plaintiff and her co-server with $2,100 each outside of the restaurant. These events became highly publicized, and the information was spread through news outlets and social media, largely to the derision of Defendant. On December 7, 2021, Defendant fired Plaintiff for discussing the tipping matter with the Customers.

On December 9, 2021, Defendant sent a cease and desist letter to Plaintiff requesting that she stop making allegedly false and defamatory statements about Defendant to media outlets. In later comments to media outlets, Defendant stated Plaintiff was not terminated for retaining the tip but refused to further discuss employee affairs allegedly out of privacy and respect for its employees.

Additionally, Plaintiff alleges that Defendant had a tip-sharing policy whereby 6% of bar sales go to bartenders, 2% of food sales go to kitchen staff, and 1% of food sales go to server assistants. These amounts were allegedly deducted from servers' paychecks. Plaintiff alleges that because of this policy Defendant, while claiming a tip credit for Plaintiff's wages and the wages of similarly situated employees, failed to pay Plaintiff and other servers minimum wage and paid its bartenders, kitchen staff, and server assistants wages exceeding the federal minimum wage. Plaintiff also alleges that she and other servers worked after the close of business assisting in cleaning and closing duties for approximately an hour and a half to two hours each night. When

Plaintiff was engaged in this work, when no tip could be received by customers, Defendant did not pay Plaintiff the federal minimum wage, and continued to take a tip-credit on those hours worked after closing.

Plaintiff filed this action alleging four violations of the Federal Labor Standards Act ("FLSA")—taking tip credit for non-tipped labor, confiscation of tip, retaliatory discharge, and a collective action in regard to an unlawful tip-pooling arrangement. Plaintiff also alleges four state law tort claims—wrongful discharge, outrage, false light, and conversion. Defendant filed a motion seeking dismissal of all of Plaintiff's claims, which Plaintiff opposes.

## II.     Legal Standard

In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Those alleged facts must be specific enough "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.*

## III.    Discussion

### A.     The FLSA Claims

#### a.    Taking Tip-Credit for Non-Tipped Labor

Plaintiff alleges Defendant violated 29 U.S.C. § 203(m)(2) because Defendant improperly took a tip-credit for non-tipped labor and paid Plaintiff a reduced hourly rate instead of minimum wage. Defendant argues Plaintiff has failed to state a claim for a tip-credit violation because Plaintiff's factual allegations do not plausibly suggest a tip-credit violation.

The FLSA requires employers to pay employees a minimum hourly wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). However, "[t]he FLSA permits employers to pay 'tipped employees,' defined as employees 'engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips,' sub-minimum wage by taking a tip credit toward the tipped employees' wages." *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 983 (W.D. Mo. 2019) (citing 29 U.S.C. § 203(t); 29 C.F.R. § 531.56(a)-(d)) (alterations adopted).

Under Department of Labor ("DOL") regulations, "[a]n employer can take a tip credit for the time a tipped employee spends performing work that is not tip-producing, but directly supports tip-producing work, provided that the employee does not perform that work for a substantial amount of time." 29 C.F.R. § 531.56(f)(4). By way of example, the regulations provide that the following tasks of servers are not tip-producing work, but instead directly support tip-producing work: "dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables." *Id.* at § 531.56(f)(3)(iii).

Here, Plaintiff alleges that Defendant required her to spend approximately two hours each night she worked "assisting with cleaning and closing duties" after the restaurant closed, and she therefore spent a substantial amount of time engaged in non-tip producing work when employed by Defendant. Defendant argues Plaintiff's closing duties were part of her job as a server and it was therefore lawful for Defendant to take a tip credit for the time Plaintiff spent engaged in these

4

duties.  Defendant further argues that because Plaintiff does not allege on average how many hours per week she engaged in the non-tipped closing duties in relation to how many hours she was engaged in tipped labor, her claim should be dismissed for failure to plead facts which raise more than a speculative right to relief.  However, this level of specificity is not required at the motion to dismiss stage.  Plaintiff pled that she spent a substantial amount of time engaged in the non-tipped closing duties, consisting of an hour and half to two hours each night she worked.  This is sufficient to plausibly state a claim that Defendant took a tip-credit for non-tipped labor in violation of the FLSA, and therefore this claim will not be dismissed.

### b. Retaliatory Discharge

Plaintiff alleges that Defendant violated the FLSA when it "terminated Plaintiff for discussing the matters concerning the [$2,100] tip with the customer." (Doc. 12, p. 13, ¶ 122). 29 U.S.C. § 215(a)(2) makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  "To establish a prima facie case of retaliation under the FLSA, [a plaintiff must] show that she participated in statutorily protected activity, that the [defendant] took an adverse employment action against her, and that there was a causal connection between [the plaintiff]'s statutorily protected activity and the adverse employment action." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (holding that when a plaintiff did not make a complaint to her employer, her claim for retaliation in violation of the FLSA should be dismissed); *see also Montgomery v. Havner*, 700 F.3d 1146, 1149 (8th Cir. 2012) (holding that when an employee called her supervisor to inquire why time was deducted from her timecard "[n]o reasonable jury could conclude [this] discussion . . . was a sufficiently clear and detailed FLSA complaint for the [employers] reasonably to understand [the plaintiff] was

5

alleging an FLSA violation.")

Here, complaining to customers about company policies or employer decisions is not a statutorily protected activity, and Plaintiff's statements to the Customers were not sufficiently clear and detailed such that Defendant would reasonably understand that through these discussions Plaintiff was alleging an FLSA violation. *See Montgomery*, 700 F.3d at 1149. Because Plaintiff has not pled facts to plausibly state that she engaged in a statutorily protected activity which led to adverse employment action, Plaintiff's FLSA retaliatory discharge claim must be dismissed.

### c. Collective Action – Unlawful Tip-Pooling Arrangement

Plaintiff on behalf of herself and others similarly situated alleges that Defendant engaged in an unlawful tip pooling arrangement when it provided 6% of bar sales to bartenders, 2% of food sales to kitchen staff, and 1% of food sales to server assistants. Defendant argues that because bartenders were tipped by customers and servers assistants indirectly received tips from customers totaling more than $30 a month, these groups were permitted to participate in the tip-pooling arrangement. Additionally, Defendant argues that because Plaintiff does not name the specific job titles of the kitchen staff nor the extent of the kitchen staff's customer interaction, she has failed to state a collective FLSA claim against Defendant related to its tip sharing policies.

The FLSA permits "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A). An "employer may require an employee for whom the employer takes a tip credit to contribute tips to a tip pool only if it is limited to employees who customarily and regularly receive tips."[2] 29 C.F.R. § 531.54 (c)(1).

Here, Plaintiff alleges that kitchen staff and server assistants did not customarily and

---

[2] As stated above, a "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

regularly receive tips in an amount exceeding $30 per month and did not regularly interact with customers or perform duties for which tips are customarily received. Additionally, Plaintiff alleges that bartenders received tips from customers but did not contribute to the tip-pool. (Doc. 12, p. 15, ¶ 136-38).

To begin, though Defendant argues that server assistants indirectly received tips from customers which totaled more than $30 a month and were therefore entitled to participate in a tip-pool, at the motion to dismiss stage, the Court must accept as true the factual allegations pled by Plaintiff. *Gallagher*, 699 F.3d at 1016. Plaintiff has pled that server assistants did not customarily and regularly receive more than $30 a month in tips and did not regularly interact with customers or perform duties for which tips are customarily received. (Doc. 12, p. 15, ¶¶ 136-37). Accepting these facts as true, Plaintiff has plausibly alleged that the purported tip-pooling scheme was unlawful in regard to the server assistants.

Defendant also argues that because Plaintiff has failed to name the titles of the kitchen staff and failed to detail the extent of these employees' customer interaction beyond alleging that any customer interaction was irregular, Plaintiff's allegations lack the specificity required to allege a claim that the kitchen staff was not permitted to participate in a tip-pooling arrangement. However, the Court disagrees. At the motion to dismiss stage, a plaintiff is not required to name exact job titles or detail exact customer interactions (or lack thereof) in order to plausibly state a claim that certain employees are not permitted to participate in a tip-pooling arrangement. *See* Fed. R. Civ. P. 8(a)(1) (requiring that a claim for relief must contain "a short and plain statement of the claim showing the pleader is entitled to relief"); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) ("A statement under Rule 8(a) "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (internal quotations and citations omitted)). Plaintiff

7

has pled facts which plausibly stated a claim that the kitchen staff was not permitted to participate in a tip-pooling arrangement, and her claim will not be dismissed on a 12(b)(6) motion.

Finally, as to the tips provided to bartenders, Defendant argues that because the bartenders were tipped employees it was lawful for them to participate in the tip-pooling arrangement. However, Plaintiff argues that because the bartenders themselves did not contribute to the tip-pool but only benefitted from it, their participation was unlawful. Because the applicable statutes and regulations are unclear as to whether employees who are not managers or supervisors but do not contribute to the tip-pool may benefit from a tip-pool, at the motion to dismiss stage this claim should be allowed to proceed. Therefore, Plaintiff has plausibly pled a collective action regarding Defendant's allegedly unlawful tip-pooling policy.

### d. Confiscation of Tip

Plaintiff also alleges Defendant wrongfully confiscated her tip in violation of the FLSA when Defendant informed Plaintiff that she would not be allowed to keep any of the $2,100 cash tip above 20%.

The FLSA states "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). Defendant argues there is no private cause of action for employees to litigate purported violations of § 203(m)(2)(B). However, 29 U.S.C. § 216(b) specially provides that

> Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages. An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

As for the $2,100 cash tip, Defendant argues that, under the facts pled by Plaintiff, Defendant did not confiscate, physically possess, take, keep, or distribute to employees any part of the tip. In her amended complaint, Plaintiff alleges Defendant took constructive possession of the $2,100 cash tip when it informed Plaintiff she would not be permitted to keep any amount of the tip above 20%. However, Plaintiff further alleges that "Defendant and Plaintiff, upon demand of the customer, returned the tipped amount to the customer" and the customer then gave Plaintiff the $2,100 cash tip outside of the restaurant. (Doc. 12, p. 11, ¶¶ 102-105). On these facts as pled in the amended complaint, it cannot be plausibly stated that Defendant kept the $2,100 tip which is currently in Plaintiff's possession.

### B. The State Law Tort Claims

#### a. Wrongful Discharge

Under Arkansas law, "when an employee's contract of employment is for an indefinite term, either party may terminate the relationship without cause or at will." *Sterling Drug, Inc. v. Oxford*, 743 S.W.2d 380, 383 (Ark. 1988) (citing *Griffin v. Erickson*, 642 S.W.2d 308 (Ark. 1982)). However, as a limited exception to the at-will doctrine, at-will employees may not be discharged in violation of well-established Arkansas public policy. *Id.* at 385. "Public policy has been controverted 'when the reason alleged to be the basis for a discharge is so repugnant to the general good as to deserve the label "against public policy."'" *Robinson v. Langdon*, 970 S.W.2d 292, 297 (Ark. 1998) (quoting *Marine Servs. Unlimited, Inc. v. Rakes*, 918 S.W.2d 132, 135 (Ark. 1996)). "Public policy is established by the Constitution and statutes [and] . . . if a constitutional or statutory public policy does not exist, the exception is not applicable." *See* Howard W. Brill & Christian H. Brill, 1 *Arkansas Law of Damages* § 19:2. "[N]o public policy bars the dismissal of an at-will employee for . . . disclosure of information to customers." *Id.* (citing *Koenighain v.

9

*Schilling Motors, Inc.*, 811 S.W.2d 342 (Ark. 1991).

Plaintiff alleges that it is against Arkansas public policy "to restrict honest communications between employees of a business and customers, particularly in circumstances where the customer's intent in performing a charitable act to a specific person is frustrated." (Doc. 12, p. 5, ¶ 45). However, Plaintiff's complaint fails to point to a constitutional provision or statute establishing this public policy. Plaintiff's communication with the Customers was not made to benefit the public at large, and terminating Plaintiff for this communication was not "so repugnant to the general good as to deserve the label against public policy." *Robinson*, 970 S.W.2d at 297 (internal quotations omitted). Therefore, because as a matter of law Defendant did not violate Arkansas public policy when it allegedly terminated Plaintiff for her communication to the Customers, Plaintiff's wrongful discharge claim will be dismissed.

**b. Outrage**

Under Arkansas law, to state a claim for outrage a plaintiff must plead facts sufficient to demonstrate:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Crockett v. Essex*, 19 S.W.3d 585, 589 (Ark. 2000) (quoting *Angle v. Alexander*, S.W.2d 933, 936 (Ark. 1997)). Arkansas courts give "a narrow view to the tort of outrage, and require[] clear-cut proof to establish the elements in outrage cases." *Id.* (citing *Croom v. Younts*, 913 S.W.2d 283 (Ark. 1996)); *see also Smith v. Am. Greetings Corp.*, 804 S.W.2d 683, 686 (Ark. 1991) ("We have taken a strict view in recognizing [the tort of outrage], especially in employment relationship situations." (citations omitted)). "The recognition of the tort of outrage does not open the doors

of the courts to every slight insult or indignity one must endure in life." *Sterling Drug, Inc.*, 743 S.W.2d at 383.

Plaintiff pleads that Defendant's conduct was extreme and outrageous when it told Plaintiff she would not be permitted to keep any amount above 20% of the $2,100 cash tip, terminated her for communicating this to the Customers, sent her a cease and desist letter after her termination, and "made public statements implying that Plaintiff had acted wrongfully in keeping her tip." (Doc. 12, p. 7, ¶ 59). Defendant argues that even accepting Plaintiff's allegations as true, she has failed to plead facts which demonstrate that Defendant engaged in outrageous conduct which was beyond all possible bounds of human decency and utterly intolerable in a civilized society. The Court agrees. *See Cesena v. Gray*, 316 S.W.3d 257, 259-60 (Ark. App. 2009) (holding that when coworkers continually and repeatedly threatened to attack plaintiff, plaintiff was terminated for alleged dishonesty, and plaintiff's employer declared him to be dishonest, incompetent, and crazy, "the conduct did not rise to the level of being extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community"); *Smith*, 804 S.W.2d at 685 (holding that when plaintiff, after a disagreement at work, was punched by his shift leader and was fired by his employer the next day for allegedly provoking the fight, these facts "did not come close" to stating a claim of outrage and the claim should be dismissed).

Additionally, the Court finds Plaintiff's allegation that she suffered emotional distress so severe that no reasonable person could be expected to endure it is a mere label or conclusion and recitation of the elements, which the Court is not bound to accept as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations omitted)). As such, Plaintiff has not plausibly pled facts demonstrating that she suffered extreme and severe emotional distress from any action of

Defendant which was utterly intolerable in a civilized society and beyond all possible bounds of human decency, and therefore her outrage claim will be dismissed.

### c. False Light

Plaintiff alleges she was placed in a false light when Defendant allegedly told media outlets that the restaurant's tip-pooling policy was not followed with regard to the tip received by Plaintiff. Plaintiff alleges this statement made a false implication because "the normal method for sharing tips was to withhold the tip-pool amount from Plaintiff's paycheck rather than from tips gathered at the end of the night." (Doc. 12, p. 8, ¶ 70). Plaintiff alleges that in making its statement, Defendant implied Plaintiff had wrongfully withheld tips from other employees. Defendant, however, maintains that its statement was truthful.

In order to state a false light invasion of privacy claim, Plaintiff must plead facts which plausibly meet two essential elements: first, that "the false light in which [s]he was placed by the publicity would be highly offensive to a reasonable person," and second "that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Dodrill v. Ark. Democrat Co.*, 590 S.W.2d 840, 845 (Ark. 1979). "The evidence must support the conclusion that the publisher had serious doubts about the truth of his publication." *Sawada v. Walmart Stores, Inc.*, 473 S.W.3d 60, 69 (Ark. App. 2015) (citing *Addington v. Wal–Mart Stores, Inc.*, 105 S.W.3d 369, 377 (Ark. App. 2003)).

Here, Plaintiff does not seem to dispute that Defendant's alleged statement was true, but instead argues that a false implication came from the otherwise true statement. However, absent a false statement, no claim for false light can be stated. *See Duggar v. City of Springdale*, 599 S.W.3d 672, 685 (Ark. App. 2020). Therefore, Plaintiff has failed to state a false light claim, and this claim will be dismissed.

### d. Conversion

Plaintiff alleges Defendant committed the tort of conversion when it "demand[ed] that Plaintiff turn over the $2,100 cash tip that she received from customers and took[] [constructive][3] possession thereof." (Doc. 12, p. 9, ¶ 81). Defendant argues that because it never took physical possession of the $2,100, it cannot be held liable for conversion. In the alternative, Defendant argues that it was further never in constructive possession of the $2,100.

"Conversion is a common-law tort action for the wrongful possession or disposition of another's property." *Buck v. Gillham*, 96 S.W.3d 750, 753 (Ark. App. 2003) (citing *McQuillan v. Mercedes–Benz Credit Corp.*, 961 S.W.2d 729 (Ark. 1998)). "The tort of conversion is committed when a party wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights." *Id.* (citing *Dillard v. Wade*, 45 S.W.3d 848 (Ark. App. 2001)). Under Arkansas law, conversion may be constructively accomplished. *Holland v. Walls*, 621 S.W.2d 496, 498 (Ark. App. 1981) (citing *Plunkett-Jarrell Grocery Co. v. Terry*, 263 S.W.2d 229, 233 (Ark. 1953)).

Under the facts as pled in the amended complaint, it cannot be plausibly stated that Defendant obtained constructive possession of the $2,100 cash tip. Reading the complaint as a whole, Plaintiff alleges that she was given the $2,100 cash tip from the Customers. Defendant then called to inform Plaintiff she would not be permitted to keep any tip above 20%. After Plaintiff informed the Customers about Defendant's plan to retain the tip, "[t]he [C]ustomers

---

[3] Paragraphs 80 and 81 of the amended complaint allege Defendant took physical possession of the $2,100 cash tip. However, this allegation is controverted by the remainder of Plaintiff's amended complaint, which consistently alleges Defendant took constructive possession of the tip. Plaintiff's response (Doc. 22) clarifies any use of the phrase "physical possession" was a drafting error, and those paragraphs should have pled only constructive possession. (Doc. 22, p. 15 n.8).

returned to the restaurant and received the tips back from Defendant *and* Plaintiff." (Doc. 12, p. 3, ¶ 26) (emphasis added). The Customers then gave Plaintiff the $2,100 cash tip. Under these facts, it cannot be plausibly stated that Plaintiff was divested of possession and control of $2,100 cash tip, nor that Defendant wrongfully committed a distinct act of dominion over the $2,100 cash tip which was inconsistent with Plaintiff's rights. As such, Plaintiff's conversion claim will be dismissed.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 16) to dismiss will be GRANTED IN PART and DENIED IN PART. Plaintiff's claims of retaliatory discharge and confiscation of tip in violation of the FLSA are dismissed without prejudice. Plaintiff's claims for the torts of wrongful discharge, outrage, false light, and conversion are also dismissed without prejudice. Plaintiff's individual claim against Defendant for taking tip-credit for non-tipped labor in violation of the FLSA, as well as the collective action in regard to the allegedly unlawful tip-pooling arrangement, remain pending for trial.

IT IS SO ORDERED this 17th day of March, 2022.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE